In the matter of the application on behalf of HOWARD F. STREEPER.

[Argued March term, 1921.   Decided June term, 1921.]

In a proceeding to obtain the release of one who has been committed as an insane person, it was improper for the vice-chancellor, who found such person to be sane, to direct his commitment to the custody of a guardian on the ground that he was feeble minded, for the laws of New Jersey declare that idiots, imbeciles or feeble-minded persons shall not be included among those persons termed insane.

---

On *habeas corpus* upon appeal from chancery.

*Mr. Powell K. Marlin* and *Messrs. Wescott & Weaver,* for the appellant.

*Mr. John Boyd Avis, Mr. Lewis Starr* and *Mr. Thomas F. McCran,* attorney-general, for the appellee.

The opinion of the court was delivered by

MINTURN, J.

On October 12th, 1915, Howard F. Streeper, a man of advanced years, and possessed of some worldly means, was committed to the state hospital at Trenton, as an indigent insane patient. Almost coincident with that proceeding, and as the result of proceedings *de lunatico inquirendo* instituted in chancery, the Gloucester county orphans court appointed a guardian of said lunatic by which the estate of the alleged indigent, amounting to over $30,000, was entrusted to said guardian to manage and control. Over four years thereafter the indigent was released from the state hospital as cured of his mental malady and was returned to his home at Woodbury. Within seven months thereafter he was recommitted upon the application of his wife to the state hospital, and remained there occupying his former status for one year when he was discharged by the order of the vice-chancellor, the form of which discharge presents the basis of this appeal.

The statute (*P. L. 1913 ch. 250*) under which the discharge was made is entitled "An act concerning the commitment of insane persons," and provides, in its thirteenth paragraph, as follows:

"In case any person is dissatisfied with the refusal of the medical director or other head medical officer to furnish a certificate of discharge admitting the sanity of such person confined in such institution, or in case such person or any friend or relative, in his behalf, desires to obtain the release of such person from any institution in this state, in which he may be confined, because of insanity, after final commitment therein, in accordance with the provisions of this act, may proceed to apply for his release in accordance with the provisions of 'An act regulating the practice of writs of *habeas corpus*, sued out by or in behalf of persons confined in any hospital for the insane, or lunatic asylum in this state,' approved April 2d, 1898, being chapter 135 of the pamphlet laws of that year, and on the return day of the writ, the justice or judge or other judicial officer hearing the matter shall not discharge said person under such writ, unless it shall be found in such proceeding that such person is sane."

The laws of 1898 (*P. L. 1898 p. 231*) provide: "The fact of the sanity or insanity of such person so detained shall be inquired into," and

"after the proof shall be submitted on both sides, and counsel heard, the justice of the supreme court or other judicial officer aforesaid, shall find and determine whether such person in whose behalf said writ of *habeas corpus* was sued out, is sane or insane; and no person so confined shall be discharged by the said justice of the supreme court, or other judicial officer granting the said writ, unless he shall find such person to be sane."

The act of 1913 further provides "that idiots, imbeciles or feeble-minded persons shall not be included among those termed insane within the provisions of this act."

The learned vice-chancellor, upon the testimony submitted, including the testimony of Mr. Streeper himself, found him to be sane, but further adjudged that he was feeble minded and committed him to the custody of the guardian theretofore appointed by the orphans court. The latter portion of the adjudication presents the situation upon which the appeal is based, the contention being that the proceeding is entirely statutory, and that the statute affords no basis for the secondary commitment to the guardian. We think this contention must prevail.

The statutory proceeding is designed, manifestly, to enable one restrained of his liberty for a reason, which, in its inception, may properly result in his commitment and detention so long as the cause thereof subsists, to show by satisfactory proof that the superinducing cause of his detention no longer exists, and that he is therefore entitled to his liberty. When the petitioner's status of mentality has been adjudged and determined, the statutory power conceded in such a situation is exhausted.

The fact of his sanity having been determined in his favor by the learned vice-chancellor, the result automatically follows that the petitioner is entitled to receive his unconditional discharge from the state hospital.

To that extent the order under review will be modified.

*For affirmance*—WHITE—1.

*For reversal*—None.

*For modification*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, HEPPENHEIMER, WILLIAMS, GARDNER—11.